My name is Victor Fleitas on behalf of Nicole Mabry. Nicole Mabry's daughter got into a fight at school like so many children have for time immemorial. It was a bullying matter. She got a bloody nose. She went to the nurse's office. Upon arriving at the nurse's office, she got a bag of ice, some tissue to stop the bleeding, and was transported to the Lee County Juvenile Detention Center. Based on a transport order from the Lee County Youth Court. Prior to her detainment status being determined, upon intake, because she had gotten into a fight, despite the absence of any weapons, despite the fact that she had already been patted down prior to being transported, despite the fact that she had been sitting in the nurse's office in no way restrained, despite the fact that Lee County itself admits that there was absolutely no reasonable suspicion, Takiyah Mabry, a 12-year-old girl who had never so much as been naked in front of her own doctor without her mother being present, was asked to strip naked, asked to squat down so that her genitals could be observed, asked to bend over, and asked to spread her cheeks. At this point, no determination had been made that Nicole Mabry should have been put in the general population. The only thing that existed at that time was a transport order. According to Lee County policy, in the absence of receiving notification that a child is supposed to be put into the general population, they put the child in the general population. Let me interrupt there. Yes, Your Honor. What does the record show that the general population was? I thought I read something. There were only six cots in three rooms. Common area, six cells. That's what we're talking about. All juveniles. For juveniles. In Lee County, there are six beds. I would say that's probably smaller than what a holding facility would be in most larger municipalities and places. And you said at the time the general population was four juveniles? I don't know the exact number of children that were there. Ms. Mabry's daughter was there with the young lady that she had gotten into the fight with, and I believe there might have been two or other three children there. There's also a holding area that Ms. Mabry's daughter was put in and held in while they were conducting the strip search of the other child. And upon conducting that strip search, both girls were then just taken back and placed in the common area, shown their cells and taken back to the common area. And the reason they were even put back there was because the youth court, if the youth court doesn't say hold them as a non-detainee in a holding cell, then they're just automatically processed and put into. What would help me is to know exactly what your legal argument is. Your Honor, the legal argument is that the Court's wholesale application of Florence through the Third Circus decision in Fasnacht is reversible error. Okay. So my question to you is below in the district court, in the record, did you ever argue that the summary judgment should be denied for Lee County even applying Florence? Did you ever argue that below? I did not. Well, I — we argued basically that the standard applied by the district court was inappropriate, they should have applied a reasonable suspicion or a special needs test. You argued what the cert papers against Fasnacht was, which was Florence is inapplicable to juvenile centers. Absolutely. Now to us, can you say — you filed no reply brief, right? I did not, Your Honor. Okay. So in your principal brief, did you ever say that applying Florence, a 5-4 decision, the district court made an error? Can you tell me where in your brief you said that applying Florence there would be reversible error? Your Honor, looking back at my brief, as I recall, I mentioned to the district court that this was a young lady who was held. I'm asking you, did you argue to us that we should apply Florence and you would still win? Did you argue that in your brief? That specific point I did not argue, Your Honor. That's a pretty important point. It is, Your Honor. I agree, but I thought that the district court was so completely wrong in applying Florence to juveniles. Okay. In making that step to apply a decision applicable to adults. I mean, Florence was controversial. It reversed our law. It's a 5-4 decision. But as I read it, it is still a balancing test. So if you'd done your work below, and you'd shown with substantial evidence that the search here, cavity, arguably suspicionless, was exaggerated or unnecessary, you could have won. Well, Your Honor, I think we win regardless. Well, but you haven't argued it. You didn't argue it below. You haven't argued it here. So let's say we apply the balancing test. Are the following facts correct, or would you dispute them if you had the opportunity to debrief it? One, did a judicial officer or a designee find that this young lady committed simple assault? The charges were dismissed, Your Honor. Did a judicial officer responding to Officer Bramble make it to that judge? He gave a transport order. He did not enter a detention order. All he ordered was for the child to be transported. He never entered a detainment order until 10 days later when he entered a detention order and a release order. Officer Bramble looked at the video, and then he called the judicial officer designee. And then, therefore, the policy that we're looking at is one that it's not clear to me it's a suspicionless one, because they only stripped this youth because there was a probable cause finding of simple assault. So they're — Lee County is only doing these suspicionless strips if there's a predicate judicial finding and charge of violence. They're — they're applying strip searches to children before they even know what the status of the children are. I know. But do you disagree that this child was stripped only after a judicial officer found probable cause of a violent offense? Yes or no? That finding was made by David Anthony, and that's why she was transported. Right. And that could be mistaken. The school could have made a mistake calling Bramble. Maybe there's some due process issue. None of that's in front of us. Well, because those issues were not brought forward because these — the issue that we decided to focus on was the strip search issue. There were innumerable issues regarding due process rejected by the district court. We addressed this case as one involving the propriety of strip searching children at the Lee County Juvenile Detention Center in the admitted absence of reasonable suspicion that they harbor contraband drugs. But there would be not just reasonable suspicion, probable cause that this individual had committed a violence — a violent offense. There is probable cause to believe that she considered — that she committed a minor offense under — Simple assault. I'm sorry, Your Honor? Simple assault. Is a minor offense. That's Jimenez v. Wood County. But wouldn't that be a penological interest to conduct a search because of the assault? Penological interest — What's the evidence that there was no valid interest? The absence of evidence. Lee County submitted affidavits, and having — it submitted no evidence to demonstrate that its penological interest required this search to be done. But there's the existence of the assault. The issue of the application of the penological interest standard, Your Honor, is what standard does the detention facility use in order to prevent the harm of drugs or weapons being introduced into general population? I thought there was evidence here that this center had had a youth shooting where they killed a correctional officer at that very center. It was not at that center, actually. I was 50 yards away from where it happened because it was right behind my office. But is that in the record here, that at a juvenile center in Tupelo? I don't think that they have any record evidence. There's just discussion of something having taken place in David Anthony's deposition 20 years ago. That child was never even patted down. Okay. But where — the weapon — the child had a weapon that ended up being a gun that the kid used to shoot someone. Yes, Your Honor. He shot Casey Harmon, Stephen Ferris. So what's your rule? What's your Fourth Amendment rule? If a child is brought after a judicial officer confirms probable cause of violence, it is unreasonable under the Fourth Amendment for them to do what? Finish the sentence. What do you want us to write? It is unreasonable for them to strip search a child reflexively without any scrutiny. Well, no. I said if a judicial officer said this child has committed a violent offense, right or wrong. You say they can't — can they look in the shoes? They can look in the shoes. They can probably ask the child to go down to bras and panties. But in the absence of any reasonable suspicion, subjecting children to a practice which is markedly and harmful — I wish that you had applied Florence. I wish you had urged us that this could be reversible, applying Florence. I think it is reversible, applying Florence, Your Honor. No, it's the first time you're saying it. You know, I'm not so sure that in my brief I didn't point out the fact that in this case there is no evidence to demonstrate that there was a particular problem to justify the application that's there. But if Florence says that's your burden, you have to give substantial evidence, right? Isn't that what Justice Kennedy wrote? I think in order to do a balancing, the State has got to come forward with something to demonstrate that this standard is needed in Lee County, particularly when they don't apply the Florence standard to its own facility. My time is up, Your Honor. All right. You saved some rebuttal time. Ms. Sherman. May it please the Court, my name is Jessica Fireman, and I represent Amicus Curiae Juvenile Law Center. I appreciate the Court's willingness to hear our arguments this morning. We urge the Court to reverse the trial court's decision below to uphold a suspicion list strip search policy for three reasons. First, the Court incorrectly applied the Florence standard, which was fashioned for adults in the criminal justice system, and that flies in the face of the Supreme Court's recent ---- I'm going to ask you the same question. In your brief, could you point me to what page you say applying the Florence balancing, the district court, we should reverse? No. I agree with Mr. Flatus. I ---- the Court could agree ---- could hold under Florence that this falls in one of the exceptions, and we did not point that out in our brief. And do you ---- am I right when I read Florence that the burdens on the plaintiff to support with substantial evidence that the type of search was unnecessary or exaggerated or applying Alito and Justice Roberts, that those exceptions, it's all the burden on the plaintiff? The standard would be to show that the response was an exaggerated response to a security concern, which I agree would be the case in the present. Well, but it's the burden would have to be the plaintiffs, according to the Supreme Court in that case, right? I believe so, yes. So where in this record has the plaintiff offered evidence? Specifically, is there any expert testimony that juveniles 12 or under aren't a threat, don't bring in weapons, don't commit suicide? Do we have anything of that nature in this record? The record shows that it's an exaggerated response to security concerns because there is no record of a specific security concern of contraband being introduced into the facility, of this individual young person being at risk of carrying contraband into the facility. How can we assume that? The plaintiff hasn't. Is there any? Did the plaintiff put on an expert that said, this is my question, youth 12 or under don't bring in contraband? Is that in this record? I don't believe it's in the record, and I believe that's why this case should not be decided at summary judgment, that it should proceed to trial so that that balancing of interests could occur. Well, isn't it, how about this analysis? Belle v. Wolffish is the basic law on this. Both Safford and Florence are factual variations, but it's still a balancing test, is it not, under Belle v. Wolffish? It absolutely is a balancing test. Safford's a 13-year-old but searched at school, and Florence is an adult. So those are variations on the theme, but overarching all of this is the balancing test of Belle v. Wolffish. Yes, Your Honor. It's a balancing test, and in this case, the balancing test is between the severe intrusion on a young person, which the Supreme Court has recognized in Redding, and the lesser penological interests. Surely there are. Does the record show that at this juvenile facility, there were only less than ten in the general population, and they were all juveniles and so forth? Yes, there were young people in the juvenile facility. There were no more than six in that facility at any time. The court in Florence, when it established the penological interests, looked to a record of a facility that was processing more than 25,000 individuals per year and a record of contraband being introduced into the facility, a record of over 1,000 gang members in the facility per day. In contrast, we have here, Takiyah Mabry, placed with just five other girls after a school fight in which she pulled another young person's hair, without record that the children were smuggling contraband into the facility. It's also worth noting that the reasonable suspicion test allows for a balancing that still allows the facility to protect the safety of the young people in the facility. So the test set forth, for example, in Redding, allows consideration of how reasonable the intrusion was at its inception and how reasonable was it in its scope. And that was our old law, Plead Florence, even as to adults, right? That was the law as to adults, and it still should be the law as to juveniles because of their unique vulnerability. It seems like that's how, around the country, these are being litigated, that Florence is just not applicable, period, end. But it would be wonderful to see a record develop saying Florence is applicable and still is unreasonable as to minors. Yes, I appreciate that, Your Honor. I think under these facts, the facts are so clearly distinguishable with six young people in a facility that could be easily monitored and particular vulnerabilities to harm. But also, we urge the Court to apply a different standard, and the United States Supreme Court has been very consistent in recognizing that the standard that applies to young people in the juvenile justice or adult justice system must be different from the standard applied. I see my time is up. Thank you. Thank you. You may be right, but this may not be the right factual situation. Thank you, Your Honor. May it please the Court, I'm William C. Murphy for Lee County. Your Honor, based on the record of the brief, we see that the sole issue in this case is whether the Supreme Court's decision in Florence extends to juvenile detainees charged with minor offenses to be placed in the general population of the juvenile detention center. Since Bell v. Woolfish, the Supreme Court has consistently held that visual body cavity strip searches serve a genuine penological interest to keep contraband out of the facility. Is there any evidence that in this particular facility any contraband was found? That couldn't have been found with a pat-down search or with a wand? I can't answer that question other than what Judge Higginson referred to about the weapon. But I would say this, and I'll go through it in whatever detail I need. At the risk of sounding crude, a razor blade is a razor blade is a razor blade, whether it's concealed in the anus of an adult or whether it's concealed in the anus of a child. That razor blade can still slash somebody's jugular vein, and it doesn't matter if there are six people in there or ten people in there or however many people in there. The focus, as we see it from these decisions, is to keep out contraband. Right, but that assumes that children are equivalent to adults and that the same fear that animated Florence would animate that concern. If, in fact, there's no evidence anywhere to suggest that kids 12 or under put razor blades between their butt cheeks, then that would be exaggerated. It would be an unnecessary step as to minors. If there were that. Right. And my point, my concern with your brief is the same as with theirs. You seem to think as long as you've established Florence applies, you win. But that's not how I read Florence at all. Florence still says, well, in these narrow adult circumstances with this volume of adults coming in, yes, it's reasonable to do a suspicionless search. But that doesn't answer your predicament where you've got to establish that, one, minor, it's a minor. Two, it's a minor offense. Those are indisputable. Three, this minor, the clarinet player that had never had any prior incident, she was patted down and wanded. And then third, she's put into a much smaller setting. So given all those, why wouldn't Justice Kennedy have said this is too invasive, exactly as he said he wouldn't then say Florence controls? Well, a corrections officer down there, now I understand that we now know that she's a clarinet player and that she's never been in trouble before. But that corrections officer at intake doesn't know that. He didn't know anything about her. And they have kids from all over around that come in there. Well, the correction officer was a woman in this case, correct? He was. And she did know that it was a minor offense. She did know that it was a minor offense. Okay. And she patted her down and she wanded her. She patted her down. And wanded. I put the wand around her for a metal razor. It would have caught a razor, as you're describing. I don't know whether it would or not. Okay. So I'm just asking you, do you agree that if we look at Florence, Justice Kennedy said the rule, and he didn't even have five votes, we've got to find Alito or Roberts, he said that if things are too invasive, the affirmance in Florence wouldn't apply. And he gave a specific example, if touching, for example, right? Right. So if in fact this woman had been touched, then you would agree that would be a violation of the Fourth Amendment? It could be. Okay. So when I look at your policy, it says visual strip search. Where does the record show that a visual strip search includes cavities? Where in the record would we know that, in fact, Lee County followed when it asked her to squat and cough? How does that seem consistent with the policy? That's the way they have interpreted the policy down there. It's set out, and that's the way the sheriff's instructions are. Those are factual aggravations that in the context of minors who have committed only a minor offense, it may be Florence would say it's unreasonable. As I said, Your Honor, it seems to us that the focus is on the problem of contraband. And as we see from Warfish on down, the Court has said that there is a general peniological interest in keeping contraband out of the facility. True. But that means under your interpretation of Florence, you can always do suspicionless searches all the way down to any age. You always win. I don't know about any age, but I think when it comes to juveniles, yes. Okay. So why not touching them? The way they do this, and you've read our brief, they have a female. I know how they do it. I'm asking for your rule, the rule you're extracting from Florence. Let me ask you another question. Let's say a judicial officer hadn't said there's probable cause for Officer Bramble's arrest. Would you still be defending this as reasonable? No, if he hadn't said that. If there were no intervening judicial officer, then you're saying it would be improper. I think that's correct. Okay. Would she even have been accepted? Pardon? If there's no charge, would she even have been accepted to the detention? Well, what they do is they send it over and he makes an analysis, this judicial officer does. They would have just, and he would have called and said, look, let her out. Okay. Does the record reflect whether Mr. Anthony is a judicial officer or is he a designee? He's a designee. Does the record reflect whether he even went to law school? No, he didn't go to law school. Okay. So why would that qualify under Justice Alito's concurrence as a judicial officer if he never went to law school? Well, under Mississippi law, under our youth court system, the youth court judge can make him a designee. Right. But we're asking right now whether what Mississippi has done here is constitutional. And if Justice Alito said that would be an exception, that creates yet another contextual problem that might make this not suitable for summary judgment. Perhaps so. Well, then you lose. But we think that he is, in this situation, acting as a judicial officer pursuant to our law, and that he is the one that could make that analysis. And that she was, in fact, charged with a minor offense of simple assault. And who made the charge? Where in the record does it say who charged her? Mr. Anthony would have charged her. Well, the school first, and then Officer Bramble, based on that, contacted Mr. Anthony. I guess off of Bramble then. I mean, Chief Justice Roberts, the final line of his concurrence says, let's not embarrass the future. We've adopted a suspicionless approach for full strip search cavities for adults. But they were very clear, the Supreme Court, even Justice Kennedy, everyone, this shouldn't be extended beyond that to a situation where it wouldn't be necessary. So as I read the record and the situation is, the question is, is it necessary with all these much more extenuating factors? Twelve-year-old, no prior record, minor offense, very unclear who charged, very unclear if the judicial officer did it, and she was wanted already and had nothing. So why are we at a – why aren't we – how is this appropriate for summary judgment? Well, Your Honor, all I can go back and say is that, as we see it, the focus should be on keeping contraband out of the facility. But everyone agrees, and if the record reflects or doesn't answer, that there is no threat of contraband being brought in from 12-year-old girls who's already been wanted and stripped. But we see through these cases that this stuff can be concealed. Even though there have been pat-downs, even though there have been wands, contraband can still be concealed. But was there any evidence at this juvenile facility that that had happened? I'm sorry, Your Honor? Was there any evidence of situations where contraband had come in with these juveniles at this facility? Not at this facility, but I think in the Supreme Court in the Earls case, which is a drug case, pointed out that detentions or that these detention centers, I'll paraphrase, analogize it to that, shouldn't have to wait until the first problem occurs before they have a policy to try to prevent it. They have a right to be proactive. Everyone agrees they have to protect the security, but they have to establish that it's necessary security. And we don't have the record in my mind to establish whether or not for minors that are 12-year-old girls it is. Let me switch the concern to a larger legal one. The school, you would agree, based on the evidence in this record, wouldn't have had authority to strip her because Stafford would apply? Correct. Okay. So why isn't the rule that you're asking us to announce, one that allows schools to do exactly what Stafford says they can't, as long as they call Officer Bramble and say, you handle this? Well, there's been a — the courts have made a distinction between a strip search at a school and a strip search at a school. I know they have. But I'm asking you, doesn't the rule that you're asking us to announce, suspicionless strip search, that would be improper at school, now become always proper under your theory as long as they get Officer Bramble involved instead of the principal? Regardless of who's involved, once that minor gets to the facility, we believe that Lee County had the right to conduct a visual cavity strip search. So they would have the right to have this type of strip search for every admittee? Yes, sir. Unless the plaintiff — And what do we balance? There's no more balancing at all? I think the balancing has already been done, as we see it, Bell v. Woolf, we've shown down, is the question is, is it going to be extended to minors, juveniles? And we say that it's reasonable and logical that it should. The court may find otherwise, but that's what we believe has been established. Shouldn't it be a case-by-case basis? Well, Your Honor — How do you balance without doing it case-by-case? Well, as I said, I think it's already been established that you can do visual cavity searches. The question is, does it apply to minors? Can you do them in the same way as you do adults? You have assumed, your client has assumed that the answer is yes. Yes. Did the district court, and I'm just asking you for a record site, did the district court purport to do any balancing? No. Okay. That's a good, clear answer. If there are no further questions, I'll release the balance of time. Thank you. All right. Thanks, sir. Judge Higginson, I wish to draw the court's attention to page 26 of the amicus brief discussing the application and the balancing of Florence in this case and appellant's brief at page 26. The position that we took was the district court's wholesale adoption of the Florence holding, as was done by the Third Circuit in Fasnacht, wholly, completely, uncritically, I would suggest, and applying it to minors under the circumstances that we find ourselves in here was wholly inappropriate, and that the proper standard for this court to use when dealing with juveniles informed by the Redding decision, Safford School District case, when informed by the Supreme Court's very clear indications that juveniles are different and they have to be dealt with differently. They're not little adults. The T.S. v. Gabbard case from the Sixth Circuit said, we are not sure that the application of an adult standard to juvenile strip searches is appropriate or should be done. That has been your argument, and that was the cert argument made against Fasnacht, that Safford should apply, Florence has no application. And, Your Honor, you are correct. That is the argument that we made here. We viewed the court's uncritical application of Fasnacht to basically empower the district court solely on the basis of a defendant suggesting generally that children can smuggle contraband will automatically result, as it did in this case, where the court conducted no balancing, where it says Fasnacht applies, penalogical interests trump everything else. It's your proposition or suggestion to us that children don't bring in contraband as much as adults do. That's what you're suggesting to us, right? What I'm suggesting to the court is that they do not, that the problems of juveniles and contraband. Do we have any expert testimony to that effect in this record? No, we do not in this record, Your Honor. Because I could see it's a debatable point. I don't think it's too callous to look either way, that the center has got to protect people they get in, and children may be more suicidal than adults. They may be more prone to hurt themselves, even if they're less aggressive to others. We just don't know and we can't guess. I would suggest that there is significant case law in the Supreme Court and also in the Fifth Circuit that recognizes that juveniles do not pose the same problems that the courts have commented on. Okay. That would be helpful. What's your best Fifth Circuit case? Because you said in this court that juveniles do not present threats to themselves or other detainees. If you say we've got it, just tell me. Or should be treated. I would suggest a rogue case, Your Honor. Rogue. Yes, Your Honor. And if I may, just have a second. I'll give you the cite. That's the Fifth Circuit's. 299-Fed 3rd, involving a juvenile strip search of, by a social worker of a juvenile at her home. In that case, the Fifth Circuit applied a probable cause standard, required a warrant, exigent circumstances before it would authorize that search. I understand it is not in the correctional setting. It's not in the juvenile setting. I'm sorry. It's not in the correctional setting or the jail setting, but I do think that that case recognizes that you have to treat juveniles differently. That's where rogue came down. It said, look, we are not going to permit these searches to be done absent there being probable cause, absent there being ---- For better or worse, whether there was a due process error, whether or not Mr. Anthony is a judicial officer, we don't have in front of us whether this girl should have been arrested for pulling the hair or not. She arrives at the center. They've got to deal with her. They have no choice. They can't say, no, we won't take her. So we are in a detention center context, and I'm curious if the record has anything to suggest that juveniles are less suicidal. They have to be less concerned about shoelaces or shanks or whatever. We don't know. You say that we should be less concerned, and you cite rogue. But that wasn't presented, and if the Florence decision says that's your burden, that's a problem for you. We cite rogue. We cite Safford. We would also suggest that before the Court can do any type of balancing under the Penal Logical Interest Test, we have the burden of showing what the intrusion is. Right. And the intrusion is significant, and we've put on record evidence of what the intrusion was in this case. There is zero evidence from Lee County as to what their Penal Logical Interest is, other than generally saying that these things happen. They did the WANDI. They did a pat-down search. There was no reasonable suspicion, and we would ask this Court to apply a standard that requires reasonable suspicion or the special needs test. Thank you, Your Honors.  We will take a short recess and then take questions.